# Myers v. The Continental Insurance Co. of the City of New York

*H. V. McNair*, for plaintiff.

*Rhoads & Sinon*, for defendant.

Rupp, P. J., March 13, 1950.—Plaintiff filed a complaint in assumpsit against defendant to recover under a policy of cargo insurance.

The complaint pleads, inter alia, that on or about August 24, 1943, plaintiff was a common carrier of freight by motor vehicle, operating in the Commonwealth under a certificate issued to him by the Pennsylvania Public Utility Commission; that on that date there was in full force and effect a policy of cargo insurance issued to him by defendant containing a Public Utility Commission rider covering common carrier liability to shippers and consignees; that the policy insured plaintiff against direct loss or damage, to an amount not exceeding $7,000, to goods and merchandise while in or on described motor trucks in transit in the custody of the assured from certain specified causes, including "Collision, i.e., accidental collision of the motor truck with any other automobile, vehicle or object" and indemnified the assured "only to the amount which the assured shall become liable to pay and shall pay in respect of the merchandise and/or goods"; that by endorsement on the policy defendant's liability for damage to insured property on any one motor vehicle was limited to $1,000; that on the date in question, while plaintiff was transporting cargo for the Pennsylvania Railroad Company, the primary carrier, from the latter's freight station at Middletown, Pa., to the Middletown Air Depot, the point of delivery, "seven (7) boxes of airplane parts, lawful goods of the United States Government, consignee, in transit in the custody of the plaintiff . . . on a motor truck of plaintiff covered by said cargo insurance policy,

were damaged to the amount of . . . ($1,024.65) by reason of the said truckload or cargo coming into accidental collision" with a railroad underpass; that defendant refused plaintiff's frequent demands for payment of $1,000, the portion of the damages for which defendant was liable under the policy; that the Pennsylvania Railroad Company paid the sum of $1,024.65 to the United States Government, consignee, and in a suit in assumpsit against plaintiff, under its contract of hauling, recovered $1,024.65 with interest, or a total of $1,317.36; and that under the terms of the policy there is due plaintiff from defendant the sum of $1,000, with interest, all of which defendant has refused to pay.

Defendant filed a preliminary objection in the nature of a demurrer, averring that the complaint does not set forth a cause of action, in that it alleges that the damage complained of was caused by collision of the truckload or cargo with an underpass, whereas under the terms of the policy defendant is liable to the plaintiff only for damage to cargo caused by collision of the motor truck itself with any other object.

Was the damage complained of a risk assumed by the insurance policy?

The same question was before the Supreme Judicial Court of Massachusetts in Mendelsohn v. Automobile Ins. Co., 290 Mass. 228, 195 N. E. 104 (1935), where plaintiff sought to recover under a policy of cargo insurance which, like the one before us, covered damage to goods and merchandise generally and contained a collision clause identical to the one involved in the present case and quoted above. There, while plaintff's truck was transporting a "bulky and high" load of parlor suite frames, the top of the load came in contact with an overhead bridge, causing damage to the goods. No part of the truck came in contact with the bridge.

In affirming a verdict for defendant directed by the lower court, the court said (p. 230) :

"The words used in defining the peril insured against by this portion of the policy are simple, everyday words and the structure of the sentence where they appear is not complicated. There is nothing to indicate that the words are given a peculiar or technical meaning in the enterprise of transporting merchandise by motor truck or in the business of insuring merchandise thus in transit. From the context in which the words are found, it does not appear that other than their ordinary meaning should be given to the words. The record shows little of the circumstances under which the policy was issued. The fact that the plaintiff would always have complete control of the manner in which the truck should be loaded and of the height and the width of the loads to be placed thereon has some tendency to explain the limitation of liability to a collision of the truck itself as distinguished from its load. We find nothing in the record which would justify us in ignoring the ordinary meaning of the words employed and treating the language as ambiguous."

Thus, the Mendelsohn case established the principle that where in cargo insurance policies there is a coverage of merchandise generally, and the manner of loading a conveyance, and the height and width of the loads, is in the complete control of the insured, the clear and unambiguous language of a collision clause such as the one before us limits the liability of the insurer to collision of the truck itself with another object, there being no basis for an inference that it was the mutual intent of the parties to assume the risk of collision between the cargo and another object caused by the manner in which the conveyance is loaded.

The present case comes squarely within this principle, and hence plaintiff cannot recover.

Plaintiff relies principally upon Bucks County Construction Company, Inc., et al. v. Alliance Ins. Co., 162 Pa. Superior Ct. 153 (1948). That decision falls into an entirely different class of cases and Judge Hirt, speaking for the Superior Court, specifically distinguished the Bucks County case from the Mendelsohn case.

In the Bucks County Construction case, a Bucyrus-Erie power shovel owned by plaintiff, which was being transported on a tractor-trailer unit, was damaged when the shovel collided with a concrete pillar. Plaintiff sought to recover the cost of repairing the shovel under a policy of casualty insurance issued by defendant and insuring property of plaintiff against direct loss or damage from "Collision, Derailment or Overturning of land conveyance while the insured property is being transported thereon, including loading and unloading". The judgment of the lower court in favor of plaintiff was affirmed. However, Judge Hirt aptly demonstrated that the shovel was one of several specific items of property identified and described in the policy, and that its character and bulk was such that it, of necessity, would extend beyond both sides of the conveyance in transit. Judge Hirt concluded that under such circumstances it properly could be inferred that it was the mutual intent of the parties to assume the risk of collision between the shovel and another object. The court said (page 155):

"The policy by its name, 'Scheduled Property Floater Policy', . . . implies protection to the property described in the policy, while in transit. And the character and bulk of the unusual items of property, specifically identified and described, has an important bearing upon the mutual intent of the parties, under their contract, as to the risks intended to be assumed. . . ,"

82

And again, at page 156:

". . . It was stated at the argument, though not so stipulated in the lower court, that the damaged property described in the schedule as Bucyrus-Erie Shovel No. 10-4 No. 18193 was so large that it of necessity extended beyond both sides of the trailer in transit. There is evidence in a fact which was stipulated in the lower court on which an inference to that effect (and we must give the plaintiff the benefit of it) rests. The power shovel here must have been so large as to extend beyond the side of the truck else it could not have been damaged without contact of the truck with the pillar. A concrete pillar, upright and immobile, could not have come in contact with the load otherwise. Because of the bulk of this equipment, specifically described in the policy of insurance, the insurer should not be relieved from liability if the loaded shovel extended over the sides of the conveyance, thus protecting the conveyance from colliding with anything, but subjecting the shovel to the whole impact of collision."

The court concluded by stating (page 158):

". . . Obviously the Mendelsohn . . . (case is) distinguished from the present appeal on facts which justified denial of recovery. . . ."

Similarly, the present case is distinguished from the Bucks County Construction case on facts which justify a denial of recovery.

The remaining cases cited by plaintiff are likewise distinguishable from the present case on comparable grounds and need not be reviewed here.

Plaintiff argues that the Public Utility Commission rider attached to the policy, as required by the Public Utilty Law, enlarges the scope of the policy to include the collision in this case. It is true that this rider protects the shipper or consignee by providing for payment for damage to property belonging to him, if

the insured common carrier is held legally liable therefor, irrespective of any conditions or limitations contained in the policy. But the rider does not enlarge the scope of the policy as between the insured common carrier and the insurer, it being specifically provided therein that:

". . . all terms, conditions, and limitations in the policy to which this endorsement is attached are to remain in full force and effect as binding between the insured and the Company. . . ."

Thus, while in an action by the shipper or consignee the rider affords him protection irrespective of any conditions or limitations in the policy, where, as here, the action is by the insured common carrier against the insurer, the insured is relegated to the provisions of the policy, unaffected by the rider.

In view of all the foregoing, it follows that judgment must be entered in favor of defendant.

And now, March 13, 1950, judgment is hereby directed to be entered in favor of defendant.