**SIMPSONVILLE WRECKER SERVICE, INC., Appellant,**

v.

**EMPIRE FIRE AND MARINE INSURANCE COMPANY, Market Finders Insurance Corp. and Ryan Insurance, Inc., Appellees.**

No. 88–CA–2171–MR.

Court of Appeals of Kentucky.

Dec. 15, 1989.

Rehearing Denied March 16, 1990.

Discretionary Review Denied
by Supreme Court
Sept. 19, 1990.

Laurence J. Zeilke, Charles F. Merz, Pedley, Ross, Zielke, Gordinier & Porter, Louisville, for appellant.

William P. Swain, Ronald L. Coombs, Louisville, for appellee, Ryan Ins., Inc.

Ronald L. Coombs, Louisville, for appellee, Market Finders, Inc. Corp.

Wayne J. Carroll, Louisville, for appellee Empire Fire and Marine Ins. Co.

Before CLAYTON, DYCHE and LESTER, JJ.

LESTER, Judge.

This is an appeal from a summary judgment dismissing appellant's complaint brought in contract on an insurance policy.

Simpsonville Wrecker Service, as part of its business enterprises, was engaged in the transportation of heavy equipment including large cranes on low boy trailers. For some fourteen years prior to 1987, SWS purchased what it thought to be cargo transportation insurance through Ryan Insurance, Inc., an agent, and a broker, Market Finders, from Empire and Marine Insurance Company, the carrier.

In May, 1987, Brandeis Machinery and Supply Corporation engaged SWS to transport a DMM Drill (a crane type piece of equipment) from Texas to Indiana. In preparation for the trip the crane was secured to the trailer by chains of ⅜ inch steel links and drawn tightly in a crisscross pattern. During the course of the journey the drill struck an overpass causing damages in the sum of $322,019.80 as asserted by Brandeis against SWS. Appellant requested Empire to pay for the repair of the drill which on several occasions it refused to do denying liability under the terms of the policy. In addition, the insurance company refused to defend the Brandeis litigation.

Keeping in mind that only the crane and not the tractor-trailer struck the overpass, Empire denied liability on the basis that there was no collision within the applicable policy provision which states:

> The Insured's liability for loss of or damage to property insured hereunder directly caused by:
>
> *   *.   *   *   *   *
>
> (b) collision, i.e., accidental collision of the vehicle with any other vehicle or object (the striking of curbing or any portion of the roadbed or the striking of rails or ties of street, steam or electrical railroads, or contact with any stationary object in backing for loading or unloading purposes, or the coming together of trucks and trailers during coupling or uncoupling, shall not be deemed a collision.)

Interestingly enough, preceding the above-quoted language, the policy provided:

> This Endorsement covers the liability of the Insured as carrier, under tariff, bill of lading or shipping receipt issued by the Insured, for direct loss or damage, from perils hereinafter specified, on shipment of lawful goods or merchandise (hereinafter called Property) consisting principally of heavy machinery, equip-

ment, cranes, autos while loaded for shipment and in transit in or on vehicles described herein, operated by the Insured, while in the custody and control of the Insured.

It is not difficult to understand why SWS thought the type of transportation and accident involved herein were covered. Of paramount importance and which should be kept firmly in focus is that the purpose of the policy was to cover "shipment" of "property consisting principally of heavy machinery, equipment, cranes, autos while loaded for shipment in transit *in or on* vehicles described herein, operated by the insured, while in the custody and control of the Insured." (emphasis added) It is of equal importance to bear in mind that the policy was not intended to nor did it cover the transporting vehicle.

With the denial of liability appellant filed its complaint alleging that Empire breached its contract by denying liability. It also alleged that Market Finders and Ryan misrepresented to SWS that the policy did in fact provide coverage for the type of accident involved which was a breach of their fiduciary duty involving errors and omissions in their professional business practices. Plaintiff-below charged the defendants with unfair claim settlement practices pursuant to KRS 304.12–230 and requested compensatory, exemplary and punitive damages.

Although interrogatories were filed along with an affidavit no evidence by way of deposition was taken. Appellant filed a motion for partial summary judgment while Empire, *and only Empire*, moved for similar relief. The court denied appellant's motion but granted Empire's, but in so doing, dismissed SWS' complaint which had the effect of dismissing its causes of action against defendants who had not sought summary judgments. Moreover, the court failed to address Ryan's counterclaim against SWS for unpaid premiums. It is in this posture that the cause is presented to us.

The crucial issue is whether the damage to the crane in hitting an overhead object absent a collision involving the vehicle transporting it is within the scope or coverage of the policy. Appellee cites to us a text, an insurance industry bulletin and cases from Alabama, Massachusetts, Georgia, Texas, Washington and Missouri for the position that the type of damage involved is not compensable. For Empire's edification we can direct its attention to Nebraska (*Barish–Sanders Motor Co. v. Fireman's Fund Ins. Co.*, 134 Neb. 188, 278 N.W. 374 (1938)) and Pennsylvania (*Myers v. Continental Ins. Co.*, 72 Pa. D. & C. 77, 60 Dauph Co. 539 (1950)) as being also supportive. Although appellant may claim the weight of authority, nevertheless, a conflict exists. 43 Am.Jur.2d *Insurance* § 725 (1982), and 10A Couch, *Insurance* § 42:171 (1982). Reflecting the opposite viewpoint, we note it can be found in the jurisprudence of Montana (*Aetna Ins. Co. v. Cameron*, Mont., 633 P.2d 1212 (1981)), South Carolina (*Huckabee Transport Co. v. Western Assurance Co.*, 238 S.C. 565, 121 S.E.2d 105 (1961)), Michigan (*C. & J. Commercial Driveway, Inc. v. Fidelity & Guaranty Fire Corp.*, 258 Mich. 624, 242 N.W. 789 (1932)), North Carolina (*Gould Morris Electric Co. v. Atlantic Fire Ins. Co.*, 229 N.C. 518, 50 S.E.2d 295 (1948)) and a federal case from New Jersey (*Garford Trucking, Inc. v. Alliance Ins. Co.*, 195 F.2d 381 (2nd Cir.1952)). Kentucky has not spoken.

Empire has set forth, by way of brief, the reasoning of our several sister jurisdictions which bolsters their contention. We now turn to the logic of the counterviews as more particularly set forth in *C. & J. Commercial Driveway, supra, Gould Morris Electric Co. supra*, and *Bucks County Construction Co., Inc. v. Alliance Ins. Co. of Philadelphia*, 162 Pa.Super. 153, 56 A.2d 338 (1948).

In the case at bench the insurer styled its policy a "Motor Cargo Liability—Truckmen's Schedule Form" and was issued to the "carrier" to cover the liability of the insured "on shipment of lawful goods or merchandise (hereinafter called Property) consisting principally of heavy machinery, equipment, cranes, autos while loaded for shipment and in transit in or on vehicles

described herein...." In *C. & J. Commercial Driveway* the policy covered "all lawful goods and merchandise consisting principally of automobiles ..." while in *Bucks County Construction Co.* coverage was extended to the property of the plaintiff including a Bucyrus–Erie Shovel. In *Gould Morris Electric Co.*, even though general merchandise was not covered specific items were, namely, hot water heaters. Thus, we note that the common thread running through all the cases is that the policies were intended to cover cargo, as opposed to the vehicles carrying it, and that, in addition to general merchandise, specific items were enumerated. As the *Gould* court pointed out:

> Thus, the parties knew from the amount of insurance and the character of the shipment, that, in all probability, portions of the cargo would extend above the top of the truck.

In the present litigation Empire drafted the contract knowing full well that cranes were to be transported and that its share of coverage (there being excess carriers in addition to appellant) was $100,000. The company here would be hard pressed to deny such knowledge after fourteen years of providing insurance to SWS.

We next turn to the so-called collision clauses. In the cause before us the disputed provision is "collision, i.e., accidental collision of the vehicle with any other vehicle or object...." In *C. & J. Driveway, Inc.* the clause provided "accidental collision of the truck with any other automobile, vehicle or object" and the *Bucks County Construction Co.* case specified "[c]ollision, Derailment or Overturning of land conveyances...." *Gould Morris Electric Co.* stated "collision of the conveyance on which the goods are carried...." In all of the cases discussed the policies required collision of the truck transporting the cargo and, likewise, in all the instances only the goods or machinery struck an object while the conveyance did not.

Since the foreign authorities allowed recovery an examination of the reasoning is in order. Although we have enumerated a number of jurisdictions reaching opposite conclusions on this subject the *C. & J. Commercial Driveway* court in mentioning the contrary Arkansas decision (among a few others) pointed out that:

> The fact that there is a conflict of opinion shows at least that language like that we are here considering is of doubtful meaning and required construction.

For that matter in our own jurisdiction even the term collision is ambiguous for in *Calvert Fire Ins. Co. v. Little*, Ky., 421 S.W.2d 584, 585 (1967), the Court said:

> The insurance policy covered damage to the truck caused by "collision of the automobile with another object." This is standard language but unfortunately not entirely free of ambiguity, since the word "collision" is susceptible of various constructions.

The Michigan Court in *C. & J. Commercial Driveway* considered the questioned clause in conjunction with all of the other language of the policy and concluded that parties mutually intended to give them a meaning consistent with the object and purpose of the insurance, namely, to cover cargo while in transit from the hazards of the road. We note that in the present litigation the contentions of appellee are the same as those in *C. & J.*, namely, that the language cannot be construed to extend liability to a collision of the load on the truck with an object; that there is no ambiguity in the language used; and that there could be no construction contrary to its plain meaning which limits liability to a collision with the truck itself. To these the court replied:

> Standing by themselves the words are plain enough, but they must be considered in connection with all of the other language of the policy in order that it may be ascertained what meaning the parties mutually intended to give them which would be consistent with the object and purpose of the insurance.
>
> A policy should be given effect according to the sense in which the parties mutually understood it when it was made. * * * Such mutual intention is to be deduced, if possible, from the lan-

guage of the contract alone. Joyce on Law of Insurance (2d Ed.) § 209.

When considered in its entirety, it will be noted that on its face the policy insures the automobiles on the hazards of the road while they are in transit. It is doubtful whether the so-called exceptions in the subdivision under the head, 'This Policy Insures,' are enlargements or limitations on the liability shown on the face of the policy.

We are particularly impressed by the logic of Chief Judge Swan's writing for the Second Circuit in *Garford Trucking Inc., supra,* to the effect:

> Even though the truck sustained no injury whatever, we regard it as extremely unlikely that the parties would have desired to differentiate the two cases had they been foreseen. Why should they? The insurance does not cover injury to the truck but only the carrier's liability for damage to the cargo. That liability is the same whether or not the truck was injured by the force that damaged its cargo. We believe it reasonable to construe the policy to cover this peril whether or not the truck sustains damage. Finally, we think the situation one within the doctrine contra proferentum which applies with especial force to insurance contracts.

The *Bucks County Construction Co., supra,* opinion expresses what we consider the better view:

> There is no ambiguity in the language of the limitation of the policy relating to damage by collision. But notwithstanding the clear meaning of words in the above clause of the policy, a broader coverage may be inferred from the circumstances which indicate a wider mutual intent. While it is of course true that, where the language of an insurance policy is clear and unambiguous, it cannot be construed to mean other wise than what it says (*Urian v. [Scranton Life] Insurance Co.,* 310 Pa. 144, 150, 151, 165 A. 21) yet it must be given a reasonable interpretation, in the light of the subject-matter and the situation of the parties at the time the contract was made, and such construction must not be manifestly ab-

surd, nor effectually prevent a recovery under all circumstances. *Janney v. Scranton Life Ins. Co.,* 315 Pa. 200, 203, 173 A. 819, 820. Insurance policies, like statutes, must receive a sensible construction. *Albert v. Mutual Benefit Health & Accident Ass'n,* 350 Pa. 268, 38 A.2d 321, 323. Set also *Perry v. Southern Surety Co.,* 78 Pa.Super. 222.

[2] The policy by its name, 'Scheduled Property Floater Policy', written on its "Contractors Equipment Floater Form" implies protection to the property described in the policy, while in transit. And the character and bulk of the unusual items of property, specifically identified and described, has an important bearing upon the mutual intent of the parties, under their contract, as to the risks intended to be assumed.

and the writer concluded:

> To say that there can be no recovery for damage to an item of property in transportation, of such bulk as to protect the conveyance from collision, under the terms of the present policy, is to admit that plaintiff paid for protection contemplated by the parties, which it did not get.

Given the facts that the policy herein was for cargo in transit and specified cargo insofar as cranes are concerned, and that the coverage was not for the vehicle itself, considered in light of the language's ambiguity as well as the policy as a whole, we must agree with the views expressed hereinabove. This we do in light of the mandate of *Wolford v. Wolford,* Ky., 662 S.W.2d 835, 838 (1984), requiring that if a contract is capable of two constructions or if its language is ambiguous then it must be liberally construed in order to resolve any doubts in favor of the insured.

Having reached the conclusion above, we find it unnecessary to address the issue of estoppel even though it may be meritorious from appellant's standpoint.

SWS next argues that Empire had a duty to defend it in the claim made by Brandeis while the carrier contends that the policy allowed it to exercise its sole discretion in

making such a determination. The trial court did not address this issue and upon remand we direct that it be resolved if appellee should have defended and if it should have but did not, is appellant entitled to its costs expended in that litigation. We remind those concerned with the thinking of the Supreme Court in this respect as found in *O'Bannon v. Aetna Casualty & Surety Co.*, Ky., 678 S.W.2d 390, 392 (1984):

> The law in the majority of the jurisdictions is that, if there is any allegation in the complaint which potentially, possibly or might come within the coverages of the policy, then the insurance company has a duty to defend. This rule allows an insurer to offer to defend a case with a "reservation of rights" agreement if it believes there is no coverage owed. *See Maneikis v. St. Paul Ins. Co.*, 655 F.2d 818 (7th Cir., 1981). The offer was not made in this case.

The motion for summary judgment was limited to the liability of Empire alone for the coappellees requested no relief by way of summary whatsoever. We find no reason to prolong this opinion by addressing the issuance of SWS' claim against Ryan and Market Finders for it is our order that:

The judgment is reversed with directions to reinstate the complaint of appellant against all appellees and try the claims of the parties thereto as well as the counterclaim in light of the views expressed herein.

CLAYTON, J., concurs.

DYCHE, J., dissents.

DYCHE, Judge, dissenting.

I must respectfully dissent from the very well-written majority opinion. While its result conforms to the expectations of the insured party, the policy itself is clear that it provided no coverage for this accident. I would affirm the trial court.