**EMPIRE FIRE & MARINE INSURANCE COMPANY,**
Appellant,

v.

**SIMPSONVILLE WRECKER SERVICE, INC., Appellee.**

No. 92–CA–2738–MR.

Court of Appeals of Kentucky.

April 29, 1994.

Discretionary Review Denied by Supreme Court Aug. 24, 1994.

Wayne J. Carroll, Edward H. Bartenstein, Louisville, for appellant.

Charles F. Merz, Laurence J. Zielke, Louisville, for appellee.

Before GUDGEL, McDONALD and WILHOIT, JJ.

GUDGEL, Judge:

This is an appeal from a judgment entered by the Jefferson Circuit Court in a tort action for damages which was based upon an insurer's alleged bad faith refusal to pay its insured's claim under a motor cargo liability endorsement attached to a liability insurance policy. Previously, this court determined in this same matter that the insurer's policy was ambiguous and therefore must be construed to provide coverage for the insured's loss. *Simpsonville Wrecker Service, Inc. v. Empire Fire & Marine Insurance Company,* Ky.App., 793 S.W.2d 825 (1989). After a second trial a jury determined that there was no basis in law or fact to justify the denial of the insured's claim, and that the insurer either knew there was no reasonable basis for denying the claim or acted in reckless disregard for whether such a basis existed. On appeal, appellant insurer contends that the trial court erred (1) by failing to grant its motions for a directed verdict, (2) by admitting damage evidence which was too specula-

tive to support a jury verdict, and (3) by failing to find that appellee had released its claim. As we agree with appellant's first contention, we reverse and remand without addressing its remaining contentions.

In May 1987 appellee was employed to transport a heavy piece of equipment from Texas to Indiana. The equipment, but not appellee's vehicle, incurred severe damage during the trip when the equipment struck a highway overpass. Appellee then sought reimbursement for the loss under the cargo transportation coverage endorsement included in a liability insurance policy issued by appellant. However, because appellee's vehicle did not itself collide with the overpass, appellant denied appellee's claim on the ground that no covered loss had occurred because appellee did not have all-risk cargo insurance coverage, but instead had limited insurance coverage only for collisions between the insured vehicle and other vehicles or objects. This action then was filed in the circuit court.

The trial court granted appellant a summary judgment on the ground that there was no coverage for the loss under appellee's policy. On appeal, however, in a two-to-one decision this court determined otherwise, stating as follows:

> Given the facts that the policy herein was for cargo in transit and specified cargo insofar as cranes are concerned, and that the coverage was not for the vehicle itself, considered in light of the language's ambiguity as well as the policy as a whole, we must agree with the views expressed hereinabove. This we do in light of the mandate of *Wolford v. Wolford,* Ky., 662 S.W.2d 835, 838 (1984), requiring that if a contract is capable of two constructions or if its language is ambiguous then it must be liberally construed in order to resolve any doubts in favor of the insured.

*Simpsonville, supra* at 829.

On September 19, 1990, after the supreme court denied a motion for discretionary review, this case was remanded to the circuit court with directions to reinstate appellee's complaint and to conduct a jury trial as to the parties' respective claims. Before the scheduled trial date, however, appellant con-

sented to the entry of a judgment against it for the amount of the insured loss. Further, appellee settled its claims against an independent insurance agent and an excess lines broker relating to their alleged failure to procure the all-risk policy requested by appellee. Hence, the only matter tried before the jury was appellee's action against appellant for compensatory and punitive damages stemming from the latter's alleged bad faith refusal to pay.

At the conclusion of the trial the court first instructed the jury that appellant was obligated to promptly pay appellee's claim. The jury was asked to determine whether appellant's failure to promptly pay that claim lacked a reasonable basis in law or fact, and whether appellant either knew it lacked a reasonable basis for denying the claim or acted in reckless disregard for whether such a basis existed. The jury answered the court's interrogatory in the affirmative. It awarded appellee $318,775 in compensatory damages for lost profits but nothing for punitive damages. This appeal followed.

First, appellant contends that the court erred by failing to grant its motions for a directed verdict. We agree.

■ In order to maintain a private cause of action for tortious misconduct justifying a claim of bad faith, an insured must prove (1) that the insurer was obligated to pay, (2) that the insurer lacked "a reasonable basis in law or fact for denying the claim," and (3) that the "insurer either knew there was no reasonable basis for denying the claim or acted with reckless disregard for whether such a basis existed." *Wittmer v. Jones,* Ky., 864 S.W.2d 885, 890 (1993). The reported Kentucky cases involving the tort of bad faith refusal to pay, however, are factually distinguishable and do not govern the precise issue presented here. In *Feathers v. State Farm Fire & Casualty Co.,* Ky.App., 667 S.W.2d 693 (1983), *overruled,* 711 S.W.2d 844 (1986), *Federal Kemper Insurance Co. v. Hornback,* Ky., 711 S.W.2d 844 (1986), *overruled,* 784 S.W.2d 176 (1989), *Curry v. Fireman's Fund Insurance Co.,* Ky., 784 S.W.2d 176 (1989), and *Wittmer, supra,* each insurer's liability for bad faith refusal to pay involved issues other than whether the insured's loss was a

type of occurrence for which coverage was provided by the terms of the company's policy. In *Feathers* and *Federal Kemper,* for example, the insurers claimed they were not legally obligated to pay fire losses otherwise covered by the policies because the insureds were allegedly guilty of arson. Moreover, in *Curry* the insurer was determined to have wrongfully continued in bad faith to refuse to pay the insured's claim even after the insurer learned that it was legally obligated on its policy. Finally, in *Wittmer* the insurer refused to pay because it could not agree with its insured as to the dollar amount of the loss.

■ Here, by contrast, the principal issue was whether the loss that occurred was one which was covered by the policy's insuring clause. Once this court determined on appeal that the policy was ambiguous and that the loss was covered by the policy, appellant ended its refusal to pay and consented to the entry of a judgment against it for the amount of the insured loss. The precise issue before us, therefore, is whether sufficient evidence was adduced at trial to establish that the refusal to pay prior to this court's final determination that coverage existed for the loss constituted a bad faith refusal to pay the claim. We are of the opinion that the refusal was not made in bad faith, and that to conclude otherwise would effectively deprive every insurer of its right either to raise lack of coverage as a defense to an action on a policy or to file an action seeking a declaration of rights respecting coverage issues.

Although the coverage issue in this case had not yet been addressed by our courts on the date of the collision between appellee's cargo and the overpass, the issue certainly was not one of first impression in a national sense. In fact, prior to that date 43 Am. Jur.2d *Insurance* § 725 (1982) had addressed the issue as follows:

One of the perils frequently covered by motor carrier cargo policies is damage or loss caused by the collision of a truck or other conveyance with another object, and the authorities are in disagreement whether a collision of the load with an object, such as, for example, an overhead bridge,

is covered by such a policy, some cases requiring the vehicle itself to collide with an object in order that the accident may be covered by the policy, and other cases taking the view that the collision of the load with an object constitutes a "collision" within the meaning of the policy notwithstanding that the vehicle itself does not strike the object. (Footnotes omitted.)

Moreover, some thirty-three years earlier it was stated in A.L.R.2d that:

Policies insuring motor carriers against liability for loss or damage to shipped property frequently provide for coverage of damage caused by the collision of the motor truck or trailer with some other object, and in several cases the question has arisen, with diametrically opposite conclusions reached ,by the courts, whether such a stipulation covers damage resulting when the shipped property, and not the vehicle itself, collided with the ceiling of an underpass, due to the height of the load. In several of such cases it was held that the policy in question did not cover such a loss.

L.S. Tellier, Annotation, *Coverage of Policy Insuring Motor Carrier Against Liability for Loss of or Damage to Shipped Property*, 36 A.L.R.2d 506, 523 (1954).

Indeed, as of the date of appellee's loss most of the courts mentioned in the quoted treatises had taken the position that no coverage existed if the insured's cargo but not the carrier's vehicle struck another object such as an overpass. *See, e.g., Trinity Universal Insurance Co. v. Robert P. Stapp, Inc.,* 278 Ala. 209, 177 So.2d 102 (1963); *St. Paul Fire & Marine Insurance Co. v. Mose Gordon Construction Co.,* 121 Ga.App. 33, 172 S.E.2d 459 (1970); *Wolverine Insurance Co. v. Jack Jordan, Inc.,* 213 Ga. 299, 99 S.E.2d 95 (1957); *Mendelsohn v. Automobile Insurance Co.,* 290 Mass. 228, 195 N.E. 104 (1935); *Western Casualty and Surety Co. v. D & J Enterprises, Inc.,* 720 S.W.2d 944 (Mo.1986); *Barish–Sanders Motor Co. v. Fireman's Fund Insurance Co.,* 134 Neb. 188, 278 N.W. 374 (1938); *Birmingham Fire Insurance Co. v. Newsom Truck Lines, Inc.,* 390 S.W.2d 537 (Tex.Civ.App.1965); *Hamilton Trucking Service v. Automobile Insur-*

*ance Co.,* 39 Wash.2d 688, 237 P.2d 781 (1951); and *Myers v. Continental Insurance Co.,* 72 Pa.D. & C. 77, 60 Dauph Co. 539 (1950).

Other courts, however, recognized the majority rule but found in specific cases that coverage existed because certain operative facts peculiar to those cases dictated different results. *See, e.g., Edgerton & Sons, Inc. v. Minneapolis Fire & Marine Insurance Co.,* 142 Conn. 669, 116 A.2d 514 (1955); *Brown Manufacturing Co. v. Crouse,* 251 Iowa 594, 102 N.W.2d 154 (1960); *Canal Insurance Co. v. Howell,* 248 Miss. 678, 160 So.2d 218 (1964); *Aetna Insurance Co. v. Cameron,* 194 Mont. 219, 633 P.2d 1212 (1981); and *Huckabee Transport Corporation v. Western Assurance Co.,* 238 S.C. 565, 121 S.E.2d 105 (1961).

Moreover, as is often true, there was also a line of cases in which a minority view was adopted. *See, e.g., Garford Trucking, Inc. v. Alliance Insurance Co.,* 195 F.2d 381 (2d Cir.1952); *C. & J. Commercial Driveway v. Fidelity & Guaranty Fire Corporation,* 258 Mich. 624, 242 N.W. 789 (1932); *Gould Morris Electric Co. v. Atlantic Fire Insurance Co.,* 229 N.C. 518, 50 S.E.2d 295 (1948); and *Bucks County Construction Co. v. Alliance Insurance Co.,* 162 Pa.Super. 153, 56 A.2d 338 (1948).

Appellant relied upon both the majority rule and an opinion letter written by Texas counsel in refusing to pay appellee's claim on the ground that there was no covered loss. We are satisfied that as a matter of law, this refusal to pay did not afford a basis under Kentucky law for asserting a claim for a tortious bad faith refusal to pay.

■ In adopting the tort of bad faith refusal to pay in *Curry, supra,* our supreme court specifically adopted the principles relating to that tort as set forth in Justice Leibson's dissenting opinion in *Federal Kemper, supra.* Those principles in turn were extracted from certain earlier decisions of the Wisconsin Supreme Court which very clearly adopted the view that if a particular claim is "fairly debatable," the insurer is entitled to debate that claim regardless of whether the debate concerns a matter of fact

or one of law. *See Davis v. Allstate Insurance Co.,* 101 Wis.2d 1, 303 N.W.2d 596 (1981); *Anderson v. Continental Insurance Co.,* 85 Wis.2d 675, 271 N.W.2d 368 (1978). Both *Davis* and *Anderson* cite to *Drake v. Milwaukee Mutual Insurance Co.,* 70 Wis.2d 977, 236 N.W.2d 204 (1975), as providing guidance with respect to the concept of a "fairly debatable" claim. In *Drake, id.* 236 N.W.2d at 208, the insurer refused to pay the insured's claim because there was a genuine dispute over the status of Wisconsin law respecting whether "uninsured motorist coverage was unavailable when another insured party was potentially liable" for the insured's damages. As the *Drake* court viewed the matter, because there was a genuine dispute over the status of the law when the insured's claim was denied, the court was precluded from finding that the insured's claim was not fairly debatable and the company could not be adjudged liable for a bad faith refusal to pay the claim.

◼ Similarly, Justice Leibson's dissenting opinion in *Federal Kemper,* adopted as the law in *Curry,* expressly acknowledges that an insurer is entitled to challenge a claim which is fairly debatable on the law or the facts. Thus, pursuant to *Curry,* it is clear that for purposes of Kentucky law, a tort claim for a bad faith refusal to pay must first be tested to determine whether the insurer's refusal to pay involved a claim which was fairly debatable as to either the law or the facts. If a genuine dispute does exist as to the status of the law governing the coverage question, the insured's claim is fairly debatable and the tort claim for bad faith based upon the insurer's refusal to pay the claim may not be maintained.

◼ Here, the collision raised a legal issue involving the interpretation of an insuring clause which evidently was originally intended by the insurance industry to prevent the bringing of fraudulent claims respecting damaged cargo. At the time the collision in question occurred, courts in most jurisdictions had denied coverage in any case where the cargo but not the carrier's vehicle was involved in a collision. Such courts had concluded that this type of clause was not ambiguous as a matter of law, thereby rejecting

the opposite conclusion reached by a minority of courts. Given the fact that the coverage issue presented by this case was one of first impression in Kentucky, and the fact that ample authorities from other jurisdictions supported the denial of appellee's claim, we cannot say that the status of the law was clear or that the claim was not fairly debatable.

There are three principal reasons for our conclusion. First, to conclude otherwise would require any insurer to pay or to deny a claim involving a legitimate first-impression coverage issue based solely upon the insurer's best guess or prediction as to what the appellate courts of this state might subsequently declare the law to be, rather than upon any analysis of the majority rule. Second, otherwise any insurer would be required to determine for itself the legal issue of whether a policy would be found by our courts to be ambiguous, even though only a Kentucky appellate court could ultimately resolve that issue and until that time no provision would be deemed ambiguous for purposes of Kentucky law. Third, a different conclusion would clearly encourage a proliferation of what have been labeled by some writers as "extortionate lawsuits."

◼ We also note that uncertainty as to insurance policy coverage issues is not uncommon, as reflected in the number of cases recently considered by our supreme court concerning purely legal issues of whether particular losses are covered by particular insurance policies. *See, e.g., Kentucky Farm Bureau Mutual Insurance Co. v. McKinney,* Ky., 831 S.W.2d 164 (1992); *Eyler v. Nationwide Mutual Fire Insurance · Co.,* Ky., 824 S.W.2d 855 (1992); *James Graham Brown Foundation, Inc. v. St. Paul Fire & Marine Insurance Co.,* Ky., 814 S.W.2d 273 (1991); *Woodson v. Manhattan Life Insurance Co. of New York,* Ky., 743 S.W.2d 835 (1987); *Simon v. Continental Insurance Co.,* Ky., 724 S.W.2d 210 (1986); *Fryman v. Pilot Life Insurance Co.,* Ky., 704 S.W.2d 205 (1986); and *Wolford v. Wolford,* Ky., 662 S.W.2d 835 (1984). Indeed, six of these seven decisions, like the earlier decision of this court in the instant action, included at least one dissenting opinion. Moreover, although in each of

these cases we can safely say that the majority's result was not surprising and in fact was probably fairly predictable, according to appellee's argument the insurer in each case subjected itself to the risk of subsequently being sued for the tort of bad faith by litigating the first-impression coverage issue involved therein. We reject the implication of such a notion, holding instead that where there is a legitimate first-impression coverage question for purposes of Kentucky law and recognized authorities support the insurer's position in denying coverage, the insured's claim is fairly debatable as a matter of law and will not support a claim of bad faith. Because this is the precise situation in the case at bar, we hold that the court below erred by denying appellant's motions for a directed verdict. *See Curry, supra.* By doing so, we believe we also avoid the need to address significant constitutional issues which would otherwise arise concerning the deprivation of appellant's right of access to the courts and its right to due process of law.

The court's judgment is reversed and remanded with directions to enter an amended judgment consistent with our views.

All concur.