BLUEGRASS MARINE, INC.; Marquette Transportation Company, Inc.; and Iowa Fleeting Service, Inc., Plaintiffs–Appellees/Cross–Appellants,

v.

ZURICH AMERICAN INSURANCE COMPANY, Defendant–Appellant/Cross–Appellee.

Nos. 02–5978, 02–5988.

United States Court of Appeals, Sixth Circuit.

Dec. 23, 2003.

494

James A. Harris, Jr., Paducah, KY, for Plaintiffs–Appellees Cross–Appellants.

William R. Bennett, III, Sheinbaum, Bennett, Giuliano, McDonnell & Levy, New York, NY, Michelle Turner, Wyatt, Tarrant & Combs, Louisville, KY, for Defendant–Appellant Cross–Appellee.

BEFORE: MERRITT, DAUGHTREY, and GIBBONS, Circuit Judges.

PER CURIAM.

The defendant, Zurich American Insurance Company, appeals from that portion of the district court's order granting summary judgment to the plaintiffs on their claims for coverage under the automatic acquisition clause of a marine vessel insurance policy. The plaintiffs, Bluegrass Marine, Inc., Marquette Transportation Company, Inc., and Iowa Fleeting Service, Inc. (collectively, "Bluegrass Marine"), cross-appeal, contending that the district court erred in refusing to allow them to proceed to trial on their "bad faith" claim against the insurer. For the reasons set out below, we conclude that the district court correctly held that Zurich was liable to the plaintiffs under the terms of the policy. We also sustain the district court's ruling that, despite Zurich's failure to pay on the plaintiffs' claim, the insurance company did not act in bad faith.

### FACTUAL AND PROCEDURAL BACKGROUND

The plaintiffs, owners of the M/V KAY ECKSTEIN, obtained hull insurance and protection and indemnity (referred to in the policy as "P & I") insurance on the vessel from defendant Zurich. In addition to establishing an agreed value for the ship, the policy provided automatic temporary coverage for new acquisitions of the insured as follows:

It is understood and agreed that this policy shall automatically cover any new or additional items of equipment purchased and/or chartered and/or operated and/or otherwise [sic] by the Assured or

for which they may become liable as of the time they come to the Assured's risk *in an amount not to exceed $1,000,000. Hull and $1,000,000. P & I per vessel.* Notice shall be given this Company and/or their agents as soon as practicable after commencement of the Assured's risk and additional premium paid as agreed.

(Emphasis added.)

During the winter of 1998 and early spring of 1999, the plaintiffs contracted with Quality Shipyards to make certain repairs and improvements on the M/V KAY ECKSTEIN. Specifically, the shipyard designed, fabricated, and installed kort nozzles[1] on the vessel at a cost of $865,500, and performed additional modification work for another $106,146. Unfortunately, however, approximately one month after completion of the work, the M/V KAY ECKSTEIN caught fire, sank, and was declared a "constructive total loss" by all parties involved.

Immediately, the plaintiffs' agent contacted Zurich and notified the insurer of the loss. In that correspondence, the agent noted that the boat was originally insured for an agreed-upon price of $2,800,000, and that the plaintiffs had subsequently "increased the value by $1,300,000 by putting on kort nozzles which the vessel did not have before. The cost for those was $1,000,000 and then they spent an additional $300,000 on the engines." Pursuant to policy provisions, Zurich reimbursed the plaintiffs for the agreed-upon vessel value of $2,800,000. By letter, however, the insurer informed Bluegrass Marine that the additional expenses incurred by the plaintiffs prior to the loss of the vessel were not covered under the applicable policy:

The purpose of the Automatic Acquisition Clause is to automatically extend, to vessels and items of equipment that are purchased, chartered, operated and/or otherwise (*e.g.,* acquired) by the assured **after** the inception of the Policy (*i.e.,* new or additional vessels and items of equipment), the same terms of coverage that are provided to those vessels and items of equipment that are described in the Policy. The language in the clause, *i.e.,* "new or additional items purchased and/or chartered and/or operated and/or otherwise," "as of the time they come to the Assured's risk," and "$1,000,000 hull and $1,000,000 **P & I per vessel**," clearly and unambiguously indicates that the purpose of the clause is to **extend** coverage to **new or additional** vessels and items of equipment, not to **increase** the Policy limits of liability with respect to vessels and items of equipment already designated in [the] Policy. Repairs or modifications to vessels and items of equipment already designated in the Policy (including the installation/addition of new parts on a designated vessel) may warrant an **increase** in the Policy limits of liability associated with such vessel or item of equipment, but they do not trigger the application of the Automatic Acquisition Clause.

(Emphasis in original.)

Confronted with this impasse, the plaintiffs filed suit against Zurich in Kentucky state court, seeking payment for the expenses incurred in adding the kort nozzles and other "equipment" to the M/V KAY ECKSTEIN. The defendant removed the matter to federal court, and each party filed a motion for summary judgment. In ruling on the cross-motions, the district

---

**1.** As explained by the district court, "[a] kort nozzle is a shroud which envelops the propeller (a/k/a wheel) on the tow boat. The kort nozzle allows the tow boat to maneuver better and use less fuel in pushing a tow."

court noted that automatic acquisition clauses in marine insurance policies normally refer only to " 'new or additional *vessels*' rather than 'items of equipment.' " Nevertheless, the court concluded:

> [N]otwithstanding the traditional understanding of automatic acquisition clauses, the one contained in the Zurich policy is different. The term "items of equipment" is substantially different from "vessel." The Court finds that the term "items of equipment" means what it says—equipment. As the testimony in the record indicates, this is a broad term incorporating any number of items, including kort nozzles, wheels, rigging, etc. The term is qualified by the word "new," indicating that it is not designed for items of routine maintenance, but only additional items above and beyond those previously included on the schedules in the policy. The Court finds that the new kort nozzles and new wheels fall within the definition of "new items of equipment" under the automatic acquisition clause in the P & I hull policy, and that the Plaintiffs are entitled to judgment in their favor.

Even given this ruling, the district court held that the question involved in the litigation was "fairly debatable." Consequently, the district judge declined to assess additional damages against the insurance company for its alleged bad faith in refusing to pay the additional claim amount under the policy.

Zurich now appeals from the decision that it is liable to the plaintiffs for $952,507.80 for "the value of the new kort nozzles and wheels ($865,500 plus $106,146) less the salvage value of the old wheels ($15,000) and the premium owed by the Plaintiffs for the automatic acquisition clause ($4,138.20)." Bluegrass Marine also appeals, asserting that the district court erred in refusing to award additional damages for the bad faith of the insurer in refusing to pay a claim that, it alleges, was not "fairly debatable."

## DISCUSSION

We review *de novo* the grant of summary judgment by a district court. *See Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1048 (6th Cir.2001), *cert. denied*, 537 U.S. 813, 123 S.Ct. 73, 154 L.Ed.2d 15 (2002). Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). No genuine issue of material fact exists unless, viewing the evidence in the light most favorable to the non-moving party, "a reasonable jury could return a verdict for [that] party." *Preferred Props., Inc. v. Indian River Estates, Inc.*, 276 F.3d 790, 801 (6th Cir.), *cert. denied*, 536 U.S. 959, 122 S.Ct. 2663, 153 L.Ed.2d 838 (2002) (quoting *Cockrel*, 270 F.3d at 1048).

Resolution of the dispute in this case requires a determination of whether the new kort nozzles and wheels installed on the M/V KAY ECKSTEIN constitute "new equipment," the loss of which is covered by the applicable marine insurance policy. Zurich argues strenuously that automatic acquisition clauses like that signed by the parties to this appeal typically seek to protect only new *vessels* from loss. In response, Bluegrass Marine relies upon the district court's determination that the plain language of the policy is not ambiguous and refers generally to "new *equipment*," not merely to new "vessels."

"Whether or not a contract is ambiguous is a question of law properly determined by the district court." *City of Wyandotte v. Consol. Rail Corp.*, 262 F.3d 581, 585

(6th Cir.2001) (citation omitted). We thus review the issue *de novo. See Schachner v. Blue Cross & Blue Shield of Ohio,* 77 F.3d 889, 893 (6th Cir.1996). As the court further explained in *Schachner,* "[c]ontract language is ambiguous if it is subject to two reasonable interpretations. *If* a court determines that a contract provision is ambiguous, *then* it 'may use traditional methods of contract interpretation to resolve the ambiguity, including drawing inferences and presumptions and introducing extrinsic evidence.'" *Id.* (citations omitted). As a result, "in this circuit, before a district court can consider extrinsic evidence of the parties' intent, it must find an ambiguity on the face of the contract." *Id.*

Zurich's contention that automatic acquisition clauses in marine insurance policies historically involve owner efforts to insure only additional vessels is premised upon just the type of extrinsic evidence that may be considered only upon a finding of ambiguity in a material term in the policy. The district judge in this case held that "the term 'items of equipment' means what it says—equipment" and, therefore, rejected evidence of allegedly customary industry practices.

The defendant nevertheless insists on appeal that the term "items of equipment" is, in fact, ambiguous if it is construed to apply to kort nozzles and wheels, because (1) such "equipment" cannot be "chartered" by an owner, (2) the insurance clause refers to hull and P & I insurance, which is not applicable to new, individual pieces of equipment, and (3) the policy contains dollar limitations "per vessel," indicating an intent in the policy language to limit coverage to actual ships, rather than merely parts of the vessels themselves. Each of these arguments can be refuted, however. First, although kort nozzles and wheels cannot be "chartered," the language of the automatic acquisition clause is actually much broader than Zurich's reading would allow. Indeed, the plain language of the clause also specifies that items of equipment that are "purchased" by the insured are covered under the policy. Clearly, the kort nozzles and wheels were purchased by Bluegrass Marine and thus are proper subjects of the policy's provisions.

Second, Zurich's argument that hull insurance and P & I insurance do not contemplate coverage of pieces of equipment smaller than an entire vessel is somewhat misleading. In truth, *P & I insurance* is akin to liability insurance and is issued only for the complete vessel and not for individual components of the entity. As argued by the insurer, to apply P & I insurance to a kort nozzle would be similar to finding that an individual could purchase automobile liability insurance only for a car engine or a steering wheel. Nevertheless, a *hull policy* entails a valuation of a vessel based upon the various components of that ship. In fact, the very hull policy issued by Zurich for the M/V KAY ECKSTEIN specifically provides that the insured vessel "shall consist of and be limited to her hull, launches, lifeboats, rafts, furniture, bunkers, stores, supplies, tackle, fittings, *equipment,* apparatus, machinery, boilers, refrigerating machinery, insulation, motor generators and other electrical machinery." (Emphasis added.) Hence, "items of equipment," as identified in the automatic acquisition clause, do fall under the coverage umbrella of a hull policy.

Finally, the policy's language limiting coverage to "$1,000,000 hull and $1,000,000 P & I *per vessel*" does not indicate an intent on the part of the contracting parties to restrict the reach of the automatic acquisition clause to vessels, rather than to various "items of equipment." Instead, the highlighted language simply limits the

**498**

insurance offered to cover losses for up-grades on any particular vessel without entering into a new insurance policy.

 In short, we agree with the district court that the term "items of equipment" is not ambiguous and thus requires no extrinsic evidence to discern its meaning. Arguments made by the defendant regarding the usual industry custom in the interpretation of automatic acquisition clauses are thus irrelevant. We therefore conclude that the district court did not err in granting summary judgment to Bluegrass Marine on the plaintiffs' claims for insurance coverage under the policy.

 On the other hand, we also find no error with regard to the district court's ruling on the question of Zurich's alleged bad faith in refusing to pay on Bluegrass Marine's demand, based on the court's application of principles of Kentucky contract law in the absence of any rule of admiralty law to the contrary. *See, e.g., Pace v. Ins. Co. of N. Am.*, 838 F.2d 572, 579 (1st Cir.1988). Pursuant to Kentucky law:

> [I]f a claim is "fairly debatable," the insurer is entitled to debate that claim regardless of whether the debate concerns a matter of fact or one of law.... [A]n insurer is entitled to challenge a claim which is fairly debatable on the law or the facts. Thus, ... it is clear that for purposes of Kentucky law, a tort claim for a bad faith refusal to pay must first be tested to determine whether the insurer's refusal to pay involves a claim which was fairly debatable as to either the law or the facts. If a genuine dispute does exist as to the state of the law governing the coverage question, the insured's claim is fairly debatable and the tort claim for bad faith based upon the insurer's refusal to pay the claim may not be maintained.

*Empire Fire and Marine Ins. Co. v. Simpsonville Wrecker Serv., Inc.*, 880 S.W.2d 886, 889–90 (Ky.Ct.App.1994) (citations omitted).

In this case, the district court concluded that summary judgment in favor of the plaintiffs was properly entered on the question of the scope of coverage of the automatic acquisition clause because the clear, unambiguous words of the contract should be taken at their face value and the concept of "equipment" should axiomatically encompass actual equipment added to a vessel. The district court, despite granting summary judgment to Bluegrass Marine on the substantive claim in the lawsuit, nevertheless found that the defense raised by Zurich resulted in an issue that could be described as "fairly debatable," in part because the marine insurance industry had previously issued policies containing automatic acquisition clauses that covered only newly-acquired vessels. We find no error in the district judge's determination that the insurance company could fairly dispute whether the "new" language in the policy was intended to extend only the same type of coverage traditionally offered to marine vessel owners.

### CONCLUSION

For the reasons set out above, we AFFIRM the judgment of the district court in its entirety.