NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 08a0463n.06
Filed: August 1, 2008

No. 07-5461

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

NAUTILUS INSURANCE COMPANY,

     Plaintiff-Appellee,

v.

GLEN CASSADY; INTERSTATE PROPERTY
REMEDIATION, INC.,

     Defendants-Appellants.

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF KENTUCKY

                                /

BEFORE:    MERRITT, CLAY, and GILMAN, Circuit Judges.

     **CLAY, Circuit Judge.** Defendants, Interstate Property Remediation, Inc., and its principal

owner, Glen Cassady, appeal from the district court's order granting summary judgment to Plaintiff,

Nautilus Insurance Company, with respect to a bad faith action initiated after Nautilus reserved its

right to deny coverage under an insurance policy owned by Cassady and Interstate. For the reasons

that follow, we **AFFIRM** the judgment of the district court.

**BACKGROUND**

     The instant appeal arises from a dispute regarding the scope of an insurance policy obtained

by Glen Cassady ("Cassady") on behalf of Interstate Property Remediation, Inc. ("Interstate") from

Nautilus Insurance Company ("Nautilus"). Cassady obtained commercial liability insurance coverage from Nautilus after speaking with Pauline Williamson ("Williamson"), an insurance representative at the Elite Agency, Inc. ("Elite"). During the conversation between Cassady and Williamson regarding appropriate coverage levels, Cassady informed her that Interstate often did work for CSX Railroad, which involved mowing grass and clearing right of ways. Cassady also informed Williamson that he, and by extension Interstate, was "a jack of all trades and master of none," apparently to indicate that he engaged in a wide variety of work. (J.A. at 373)

To complete the process for purchasing a policy, Nautilus required Cassady to complete a Commercial Application Form. After speaking with Cassady, Williamson filled out the application. The application required Williamson to answer questions regarding Interstate's business and operations. In response to such questions, Williamson answered that Interstate was engaged in the business of "mowing grass for railroads," and indicated under a section entitled "Schedule of Hazards" that Interstate was primarily in the business of "Landscaping-Gardening and drivers" as well as "mowing grass for Railroads." (J.A. at 37-42, 420). In response to a series of "yes" or "no" questions, Williamson responded "no" to a question which asked whether Interstate contemplated "any demolition exposure . . . ." (*Id.*) Cassady signed the application and acknowledged that Nautilus would rely on the information contained therein to determine whether an insurance policy would be issued to Interstate.

Upon receipt of Interstate's Commercial Application Form, Nautilus issued a general liability insurance policy with a limit of $1 million to Interstate. The general insurance policy contained the following provisions:

2

SECTION I – COVERAGES
COVERAGE [OF] BODILY INJURY AND PROPERTY DAMAGE
LIABILITY
1.  Insuring Agreement:
    a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages. However, we will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply. We may, at our discretion, investigate any 'occurrence' and settle any claim or 'suit' that may result.

(J.A. at 43)

Additionally, Cassady signed and returned to Nautilus a General Change Endorsement form which contained the following exclusions:

DEMOLITION AND BUILDING WRECKING CONDITIONAL EXCLUSION

The following exclusion is added to Paragraph 2. Exclusions under SECTION I – COVERAGES, BODILY INJURY AND PROPERTY DAMAGE LIABILITY

This insurance does not apply to 'bodily injury' or 'property damage' for demolition or wrecking of buildings or structures conducted by you unless coverage was purchased for 'Wrecking–buildings or structures' and designated on the Declarations.

The following additional exclusions apply to demolition or wrecking operations:
(1) This insurance does not apply to 'bodily injury' or 'property damage' arising out of:
    (a) The use of cranes, ball and chain, or similar apparatus; or
    (b) The demolition or wrecking of any building or structure that has an original height in excess of three stories.

(J.A. at 90)

3

Following the issuance of this policy, Interstate contracted with CSX to work at a job site in Johnstown, Pennsylvania. Although the nature of this contract is disputed by the parties, Interstate was required to clear or tear down several one-story sheds located on the property. Interstate rented a trackhoe to complete the duties enumerated in the CSX contract. On December 27, 2004, James West, an employee of Interstate, was sent to the Johnstown site to tear down the sheds. Also present was James Hale, who accompanied West to Johnstown and was on site while West removed the sheds. During the CSX project, a track from the trackhoe struck Hale, seriously injuring him. As a result of these injuries, both of Hale's legs were amputated.

Following the accident, Hale filed suit against Interstate in Pennsylvania state court. After being noticed with the suit, Interstate sought to invoke its insurance policy coverage through Nautilus. In response, Nautilus sent Cassady a reservation of rights letter. Thereafter, Nautilus filed suit seeking a declaratory judgment that it had no duty to defend or indemnify Interstate in Hale's personal injury suit. Instead, Nautilus claimed that Hale's injuries arose from conduct that fell outside of the scope of Interstate's coverage. In particular, Nautilus asserted that they had no duty to defend Interstate as a result of exemptions under the policy for bodily injuries resulting from demolition activities and the exclusion for injuries resulting from the use of mobile equipment. Additionally, Nautilus alleged that Cassady misrepresented the nature of Interstate's business and that the contract should be voided on that basis. Interstate, for its part, asserted a bad faith counterclaim against Nautilus because of its handling, investigating and adjusting of Hale's claim.

Before the district court, Nautilus filed a motion for summary judgment, asserting that it was not required to extend coverage under Interstate's policy. Nautilus also moved for summary

judgment with respect to Interstate's bad faith claim. Interstate moved for cross-summary judgment, contending that Nautilus had an obligation to defend against Hale's suit and to cover any resulting judgment. The district court granted summary judgment in favor of Interstate, finding that the removal of a one-story shed did not constitute "demolition" under the terms of the insurance policy. The district court, however, granted Nautilus' motion for summary judgment with respect to Interstate's bad faith claim. The parties settled the claims brought by Nautilus with respect to the policy exclusions and misrepresentation. Interstate now appeals the district court's dismissal of its bad faith claim.

## DISCUSSION

### A. Standard of Review

This Court reviews a district court's grant of summary judgment *de novo*. *Monette v. Electronic Data Sys. Corp.*, 90 F.3d 1173, 1176 (6th Cir. 1996). Summary judgment is appropriate if, pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, "show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). As the moving parties, Defendants bear the burden of showing the absence of a genuine issue of material fact as to at least one essential element on each of Plaintiff's claims. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Plaintiff, as the non-moving party, must then present sufficient evidence from which a jury could reasonably find for it. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). This Court must then determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether

it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. In making this determination, this Court must draw all reasonable inferences in favor of the non-moving party. *See National Enters., Inc. v. Smith*, 114 F.3d 561, 563 (6th Cir. 1997).

**B.      Analysis**

Interstate contends that the district court improperly granted summary judgment in favor of Nautilus on Interstate's claim that Nautilus denied coverage in bad faith. Specifically, Interstate contends that the general liability insurance policy clearly provides coverage for the injuries sustained by Hale and therefore Nautilus had no reasonable basis for its denial of coverage. We disagree.

Under Kentucky law, to establish bad faith on the part of an insurer, a party must satisfy a three-pronged test. An insured must prove: (1) that the insurer was obligated to pay; (2) that the insurer lacked a reasonable basis in law or fact in denying the claim; and (3) that the insurer knew there was no reasonable basis for denying the claim or acted with reckless disregard for whether such a basis existed. *Empire Fire & Marine Ins. Co. v. Simpsonville Wrecking Service, Inc.*, 880 S.W.2d 886, 888 (Ky. Ct. App. 1994). In the instant case, Interstate failed to establish a genuine issue of material fact with respect to Nautilus' "reasonable basis" for denying the claim. Indeed, we find that Nautilus challenged Interstate's coverage based on a debatable or reasonable interpretation of the demolition exclusion.

As an initial matter, it is undisputed that Interstate did not purchase the demolition policy. It is also undisputed that at the time of Hale's accident, Interstate employees were engaged in a project that involved the removal or tearing down of a one-story shed. The central dispute, therefore,

6

is whether Nautilus reasonably determined that the removal of the one-story shed constituted "demolition" within the meaning of Nautilus' policy exclusion such that it had no duty to defend Interstate in Hale's personal injury suit.[1]

The general liability insurance policy contains the following disputed exclusion:

> This insurance does not apply to 'bodily injury' or 'property damage' for *demolition or wrecking* of buildings or structures conducted by you unless coverage was purchased for 'Wrecking–buildings or structures' and designated on the Declarations.
>
> The following additional exclusions apply to demolition or wrecking operations:
> (1) This insurance does not apply to 'bodily injury' or 'property damage' arising out of:
> > (a) The use of cranes, ball and chain, or similar apparatus; or
> > (b) *The demolition or wrecking of any building or structure that has an original height in excess of three stories.*

(J.A. at 90) (emphasis added). It is clear that the demolition exclusion is not a model of draftsmanship. Indeed, when read as a whole, the demolition-wrecking exclusion is susceptible to two reasonable readings and thus, the district court properly granted Nautilus' motion for summary judgment.

---

[1] Interstate argues that the demolition exclusion is not applicable at all, regardless of this Court's interpretation of "demolition." Instead, Interstate argues that Hale was not injured by the actual demolition of the sheds on CSX's property, but rather from the trackhoe that was utilized to engage in the work in Johnstown. This is a distinction without a difference. The sole purpose of Interstate's presence in Johnstown was to remove the sheds, and Interstate rented the trackhoe for that reason. Thus, whether Hale was injured from falling debris or the trackhoe, either injury would have resulted from the destruction of the sheds.

Under one interpretation, as Nautilus notes, the introductory paragraph can be read broadly to exclude from coverage those bodily injuries resulting from "demolition or wrecking of buildings." The following paragraph can then be read as a limitation on policyholders who purchased coverage for demolition activities. Such an interpretation would exclude from coverage those activities that require the removal of structures from properties, regardless of the size of the structure. Again, it is undisputed that Interstate's contract with CSX required the removal of four one-story sheds from CSX's property. (J.A. at 414) ("Contractor will furnish superintendence, labor, equipment, and materials required to demolish, remove and properly dispose of the buildings and platforms identified above and as shown on the attached maps.") Under a second interpretation, however, the paragraph following the introductory paragraph can be read as limiting, qualifying or defining the broad term "demolition" to mean the "demolition or removal of structures in excess of three stories." Indeed, as Interstate notes, it is plausible that the exclusion was meant to apply to larger scale demolition activities.

Whether the policy could plausibly be read to extend coverage to Interstate, however, is not the test. Indeed, Kentucky courts have held that, absent any misconduct, where a claim is fairly debatable, "the insurer is entitled to debate that claim regardless of whether the debate concerns a matter of fact or one of law." *Empire Fire & Marine Ins. Co.,* 880 S.W.2d at 889-90. In the instant case, Interstate has put forth no additional evidence of misconduct on the part of Nautilus, beyond the reservation of rights, to support its bad faith claim. Thus, the district court properly granted summary judgment in favor of Nautilus on Interstate's bad faith claim.

**CONCLUSION**

For the reasons discussed above, we **AFFIRM** the judgment of the district court.