*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 13a0294p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

PHILADELPHIA INDEMNITY INSURANCE
COMPANY,
    *Plaintiff-Appellee/Cross-Appellant,*

    *v.*

YOUTH ALIVE, INC.,
    *Defendant-Appellant/Cross-Appellee.*

Nos. 12-5759/5805

Appeal from the United States District Court
for the Western District of Kentucky at Louisville.
No. 3:09-cv-00347—Charles R. Simpson III, District Judge.

Argued: April 25, 2013

Decided and Filed: October 11, 2013

Before: SILER, GIBBONS, and GRIFFIN, Circuit Judges.

_____

## COUNSEL

_____

**ARGUED:** T. Morgan Ward, Jr., STITES & HARBISON, PLLC, Louisville, Kentucky, for Appellant/ Cross-Appellee. Palmer G. Vance II, STOLL KEENON OGDEN PLLC, Lexington, Kentucky, for Appellee/Cross-Appellant. **ON BRIEF:** T. Morgan Ward, Jr., Jamie K. Neal, STITES & HARBISON, PLLC, Louisville, Kentucky, for Appellant/ Cross-Appellee. Palmer G. Vance II, Carl N. Frazier, STOLL KEENON OGDEN PLLC, Lexington, Kentucky, Shea W. Conley, Matthew T. Lockaby, REMINGER CO. LPA, Lexington, Kentucky, for Appellee/Cross-Appellant.

_____

## OPINION

_____

GRIFFIN, Circuit Judge. At this juncture, the sole question at issue in these consolidated appeals—which arise from an insurance coverage dispute between Philadelphia Indemnity Insurance Company ("Philadelphia Indemnity") and its insured, Youth Alive, Inc. ("Youth Alive")—is whether Youth Alive sufficiently alleged that

Philadelphia Indemnity acted in bad faith in seeking a declaratory judgment that neither of its two pertinent insurance policies provided coverage to Youth Alive. Because we conclude that Philadelphia Indemnity's position on coverage was reasonable as a matter of law, we agree with the district court that Youth Alive failed to sufficiently allege bad-faith claims against Philadelphia Indemnity. We therefore affirm the dismissal of Youth Alive's claims. We dismiss as moot the remainder of Youth Alive's appeal and Philadelphia Indemnity's cross-appeal.

I.

In this diversity action, the underlying facts are not in dispute. Youth Alive is a nonprofit corporation providing mentoring and other services to at-risk youth in Louisville, Kentucky. In 2008, Youth Alive transported several youths to an event in Louisville using three vans owned by Youth Alive. When the event concluded, four of the youths attempted to board a Youth Alive van for the ride home but were apparently unable to do so because it was full. Noticing the situation, a Youth Alive employee requested that sixteen-year-old Herbert Lee, a Youth Alive participant who had driven himself to the event in a separate vehicle, drive the four children to their homes. Lee agreed to do so, and the four youths traveled with him.

Lee, however, did not possess a valid driver's license. Moreover, the car that he was driving was not his: it had been stolen during a carjacking. Soon after Lee drove away from the event toward his passengers' homes, a police officer noticed that Lee was driving erratically. The police officer ran a check of the license plate information, discovered that the car had been stolen, and gave chase. Lee fled from the pursuing officer but lost control of his car and collided with a tree. Lee survived the crash, but all four of his passengers were killed.

After the accident, the estates of the four children brought lawsuits against Youth Alive in Kentucky state court, alleging that Youth Alive was negligent in permitting the children to be driven home by Lee. Youth Alive notified Philadelphia Indemnity of the suit and requested defense and indemnification under two policies issued to it by Philadelphia Indemnity: a commercial general liability policy with a $1 million liability

limit (the "CGL policy") and a commercial excess liability policy with a $2 million liability limit (the "excess policy"). Philadelphia Indemnity provided a defense to Youth Alive in the estates' state court action pursuant to a reservation of rights letter that disputed coverage.

Thereafter, Philadelphia Indemnity filed in the United States District Court for the Western District of Kentucky a declaratory judgment action seeking a judicial determination that neither policy provided coverage for the claims arising from the accident. According to Philadelphia Indemnity, the CGL policy did not provide coverage because Automobile Exclusion (g) excluded coverage for any bodily injury arising from the use of any automobile "owned or operated by or rented or loaned to any insured." Philadelphia Indemnity argued that Exclusion (g) applied because the CGL policy defines "insured" to include "volunteer workers" and "club members" performing activities on Youth Alive's behalf. According to Philadelphia Indemnity, Lee was either a "volunteer worker" or a "club member" and, accordingly, bodily injury resulting from his operation of the car was excluded from coverage.

Philadelphia Indemnity likewise argued that its excess policy did not provide coverage for claims arising from the accident. According to Philadelphia Indemnity, the excess policy also contained an automobile liability exclusion that excluded by its plain terms "any liability" arising out of the use of any automobile, whether or not operated by an insured.

Youth Alive defended Philadelphia Indemnity's declaratory judgment action and claimed coverage under the two commercial policies. In addition, Youth Alive filed counterclaims asserting that Philadelphia Indemnity's coverage positions had no reasonable basis in law or fact and therefore Philadelphia Indemnity (1) breached its common law duty of good faith and fair dealing and (2) violated the Kentucky Unfair Claims Settlement Practices Act, Ky. Rev. Stat. § 304.12-230, by misrepresenting pertinent coverages and failing to affirm liability on claims within a reasonable time.

The parties filed cross-motions for summary judgment on the issues of coverage, and Philadelphia Indemnity filed a Federal Rule of Civil Procedure 12(b)(6) motion to

dismiss Youth Alive's bad-faith counterclaims. The district court granted in part and denied in part both parties' summary judgment motions, concluding that Philadelphia Indemnity was obligated to defend and indemnify Youth Alive pursuant to the CGL policy but not under the excess policy.

In the meantime, however, the state court action between the estates and Youth Alive was dismissed and Youth Alive's liability to the estates extinguished by a settlement and the payment by Philadelphia Indemnity of $1.8 million. The settlement sum represents the $1 million limit of Philadelphia Indemnity's CGL policy, plus $800,000 of the $2 million excess policy.

Later, the federal district court granted Philadelphia Indemnity's Rule 12(b)(6) motion to dismiss Youth Alive's statutory and common-law bad-faith counterclaims, reasoning that, as a matter of law, Philadelphia Indemnity's coverage position had not been taken in bad faith. The parties cross-appealed the district court's adverse rulings.

II.

At oral argument, the parties conceded that their appeals of the district court's summary judgment rulings on the issue of coverage are moot in light of the settlement of the underlying personal injury action and payment by Philadelphia Indemnity. *See Wedgewood Ltd. P'ship I v. Twp. of Liberty*, 610 F.3d 340, 348 (6th Cir. 2010) ("The test for mootness is whether the relief sought would, if granted, make a difference to the legal interests of the parties." (internal quotation marks omitted)). As a result, only the dismissal of Youth Alive's bad-faith claims remains pending for purposes of this appeal.

We review de novo the grant of a motion to dismiss under Rule 12(b)(6), construing the record in the light most favorable to the non-moving party and accepting all well-pled factual allegations as true. *See Terry v. Tyson Farms, Inc.*, 604 F.3d 272, 274 (6th Cir. 2010). While a complaint will survive a motion to dismiss if it contains "either direct or inferential allegations respecting all material elements" necessary for recovery under a viable legal theory, this court "need not accept as true legal conclusions or unwarranted factual inferences, and conclusory allegations or legal conclusions

masquerading as factual allegations will not suffice." *Id.* at 275–76 (citation and quotation marks omitted). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Republic Bank & Trust Co. v. Bear Stearns & Co., Inc*., 683 F.3d 239, 246–47 (6th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Rather, '[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Id.* at 247 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Youth Alive claims, under Kentucky law, that Philadelphia Indemnity's positions disputing coverage under the two policies were taken in bad faith and caused Youth Alive to suffer significant damages—including cessation of its operations—during the pendency of the underlying litigation. Under Kentucky law, a plaintiff must adequately allege three elements to maintain a bad-faith claim: (1) that the insurer was "'obligated to pay the claim under the terms of the policy'"; (2) that the insurer lacked "'a reasonable basis in law or fact for denying the claim'"; and (3) that the insurer "'either knew there was no reasonable basis for denying the claim or acted with reckless disregard for whether such a basis existed.'" *Pedicini v. Life Ins. Co. of Alabama*, 682 F.3d 522, 528 (6th Cir. 2012) (quoting *Wittmer v. Jones*, 864 S.W.2d 885, 890 (Ky. 1993)). This standard applies to both Youth Alive's common-law and statutory bad-faith claims. *Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521, 527 (6th Cir. 2006).

The bad faith inquiry essentially probes whether, "in the investigation, evaluation, and processing of the claim, the insurer acted unreasonably and either knew or was conscious of the fact that its conduct was unreasonable." *Phelps v. State Farm Mut. Auto. Ins. Co.,* 680 F.3d 725, 732 (6th Cir. 2012) (internal quotation marks omitted). As a result, if an insured's entitlement to coverage on a given claim is "fairly debatable," inasmuch as there is a "genuine dispute" over the pertinent facts or law, the insurer is entitled to litigate its duty to defend or indemnify the claim. *Empire Fire & Marine Ins. Co. v. Simpsonville Wrecker Serv., Inc.*, 880 S.W.2d 886, 889–90 (Ky. Ct.

App. 1994). While a disputed factual matter—such as a disagreement over the appropriate valuation of the loss—will not always preclude a bad-faith claim as a matter of law, "[u]ncertainty as to application of insurance policy provisions . . . is a reasonable and legitimate reason for an insurance company to litigate a claim." *Farmland Mut. Ins. Co. v. Johnson*, 36 S.W.3d 368, 375, 377 (Ky. 2000). Thus, when an insured's claim implicates an "unresolved legal issue"—such as when recovery under an insurance policy is "dependent upon a legal issue of first impression in Kentucky courts," *id.* at 375—the claim is "fairly debatable as a matter of law and will not support a claim of bad faith." *Empire*, 880 S.W.2d at 891. Because the courts do not expect an insurer to "subject[ ] itself to the risk of subsequently being sued for the tort of bad faith" simply for litigating a first-impression issue, a bad-faith claim is precluded as a matter of law as long as there is room for reasonable disagreement as to the proper outcome of a contested legal issue, even if in hindsight it was "fairly predictable" that the dispute would be resolved against the insurer. *Id.*

Applying these principles, we agree with Philadelphia Indemnity that, even on the facts as presented in Youth Alive's counterclaims, Youth Alive has failed to adequately allege the second element of the bad-faith analysis; specifically, that Philadelphia Indemnity lacked a reasonable basis in law or fact for contesting coverage under both policies. *Pedicini*, 682 F.3d at 528. With respect to the CGL policy, the pertinent policy language arguably supports Philadelphia Indemnity's position. The CGL policy defines a "volunteer worker" as an unpaid non-employee who donates her work and "acts at the direction of and within the scope of duties determined by [Youth Alive]." Although the district court ultimately ruled that Lee's acquiescence to Youth Alive's request that he drive four children home from a sponsored event was neither sufficiently donative nor suitably taken within the scope of duties determined by Youth Alive to render him a "volunteer worker" for purposes of the CGL policy, Philadelphia Indemnity's argument in this regard was reasonable and may have been correct.

In support of its claim that Philadelphia Indemnity's position was unreasonable, Youth Alive relies in part on its executives' and board members' opinions regarding who

they believe qualifies as a "volunteer" for purposes of the organization's operations. But coverage under an insurance policy depends upon the terms of the policy at issue, not on either party's unilateral definition of similar language in extrinsic materials. *See State Farm Mut. Auto. Ins. Co. v. Slusher*, 325 S.W.3d 318, 322 (Ky. 2010). The CGL policy provided its own definition of the term "volunteer," and Philadelphia Indemnity's reading of the policy's language, if not a persuasive interpretation, is at least a plausible one. Youth Alive arguably had a duty to transport the four children home from its sponsored event. There is no temporal requirement to the CGL policy's definition of "volunteer worker," and it was not unreasonable to argue that Lee, in accepting Youth Alive's directive to transport the children on its behalf, fell within the terms of the policy despite his brief term of service. Philadelphia Indemnity's position regarding the policy language was reasonable, and there is no Kentucky precedent to the contrary. Thus, Philadelphia Indemnity's interpretation of the policy was not so obviously implausible as to give rise to a bad-faith claim. *See Empire*, 880 S.W.2d at 891.

Philadelphia Indemnity's argument that Lee was an insured by virtue of being a "club member" was similarly a matter subject to genuine debate. The CGL policy does not define "club member," and Youth Alive again points to several sources extrinsic to the policy—including standard industry practice and its own articles of incorporation, which purportedly prohibit "members"—in an attempt to demonstrate that the proper interpretation of "club member" is not "fairly debatable." But, again, this court's initial focus is on the meaning of the terms of the policy at issue, not on how the same or similar terms have been unilaterally deployed in different contexts by the parties. *Slusher*, 325 S.W.3d at 322. It was reasonable to assert that "club member" unambiguously carries an "ordinary meaning" similar to that advanced by Philadelphia Indemnity. *Id.* Despite Youth Alive's arguments to the contrary, the use of the term "member" in the CGL policy was not necessarily fused either to industry standards or to Youth Alive's definition of "member" in its organizational documents; the former could well be significantly broader than the latter two uses of the term, or vice versa.

As Philadelphia Indemnity observes, Lee was a relatively active Youth Alive participant and had successfully applied to partake in several programs offered by the organization. In our view, Philadelphia Indemnity's argument that Lee's admittance to and participation in Youth Alive activities made him a "member" of the group was, even if ultimately incorrect, not entirely lacking in any reasonable basis. Again, there are no Kentucky cases on point that require a contrary construction of similar language, nor does the sparse out-of-state authority compel a different result. The success of Philadelphia Indemnity's position was not so improbable that the question was functionally not an open one under Kentucky law. *See Empire*, 880 S.W.2d at 891. As a result, although the district court ultimately concluded that Lee was neither a "volunteer worker" nor a "club member" under the terms of the CGL policy, we hold, as a matter of law, that Philadelphia Indemnity's position on coverage was reasonable. *Id.*

Youth Alive is similarly incorrect in arguing that Philadelphia Indemnity had no reasonable basis to contest coverage under the excess policy. In fact, the plain language of the excess policy supports Philadelphia Indemnity's position, and the district court agreed with Philadelphia Indemnity that it had no duty to defend or indemnify based upon its excess policy. While there may be occasions when an insurance company has advanced arguments that are so unlikely to succeed that coverage is not "fairly debatable," this is not the case here.

Finally, to the extent that Youth Alive asserts that Philadelphia Indemnity proceeded in bad faith by unreasonably delaying settlement and erecting "needless adversarial hoops" as preconditions to Youth Alive's indemnification, we disagree. *Farmland*, 36 S.W.3d at 376 (quotation marks omitted); *see Phelps*, 680 F.3d at 733. The only dilatory tactic alleged by Youth Alive is that Philadelphia Indemnity refused to settle the estates' claims against Youth Alive pending the outcome of its declaratory judgment action in the district court. But, as indicated, Philadelphia Indemnity's litigation stance in the district court was reasonable. When coverage is reasonably in dispute, the preferred course of conduct for an insurance company is what occurred in

the present case:  (1) a defense of its insured's underlying personal injury action under a reservation of rights; and (2) a separate declaratory action adjudicating the issue of coverage.  *See Aetna Cas. & Sur. Co. v. Commonwealth*, 179 S.W.3d 830, 841 (Ky. 2005); *see also* 14 *Couch on Insurance* §§ 202:1, 202:38 (3d ed. 2012).

Here, it was reasonable for Philadelphia Indemnity not to commit itself to a settlement before coverage was determined.  Furthermore, Philadelphia Indemnity investigated the claim, provided a defense, and eventually settled the case on Youth Alive's behalf for an amount within its two policies.  Although Youth Alive incurred expenses and hardship in contesting coverage with Philadelphia Indemnity, its allegations of bad faith fail as a matter of law.  *See Motorists Mut. Ins. Co. v. Glass*, 996 S.W.2d 437, 452 (Ky. 1997).  We therefore agree with the district court's dismissal.

III.

Accordingly, we affirm the district court's dismissal of Youth Alive's counterclaims.  We dismiss as moot the remainder of Youth Alive's appeal and Philadelphia Indemnity's cross-appeal.